(C. D. 171)

Geo. S. Bush & Co., Inc., et al. *v.* United States

## United States Customs Court, Third Division

(Decided June 2, 1939)

*Lawrence & Tuttle* (*Frank L. Lawrence* and *George R. Tuttle* of counsel) for the plaintiffs.

*Webster J. Oliver*, Assistant Attorney General (*Frank X. O'Donnell, Jr.*, junior attorney, and *John J. McDermott*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an action against the United States brought by an importer to recover certain sums of money paid as customs duties upon importations of merchandise at the port of Seattle, Wash. Two protests are involved which were consolidated and tried together at the port of Seattle. The attorney for the plaintiffs at the hearing made the following statements:

The merchandise is invoiced as mixed meal fertilizer consisting of a mixture of 95 percent soya bean cake meal and 5 percent castor seed cake meal; also as 2,000 bags of meal fertilizer consisting of a mixture of 95 percent peanut cake meal and 5 percent castor seed cake meal.

I offer to stipulate with Government counsel that so far as the mixtures or so far as the substances which go to make up these importations are concerned, that the descriptions on the invoices correctly represent the merchandise; namely, that the merchandise is a mixture of 95 percent soya bean cake meal and 5 percent castor seed cake meal, or as previously given.

To this the Government attorney agreed, as follows:

Mr. McDERMOTT. Upon the advice of the United States examiner, Government counsel agrees to the mentioned stipulation.

An examination of the invoices involved discloses that protest 886346–G, entry 0836, covers 100 bags of meal fertilizer consisting of 95 per centum soya bean cake meal and 5 per centum castor seed cake meal. The remaining two entries covered by that protest, and the entry covered by protest 886345–G, involve a total of 5,334 bags of a mixture of either 94 per centum or 95 per centum peanut cake meal and 6 per centum or 5 per centum, respectively, of castor seed meal.

These commodities were assessed for duty at three-tenths of 1 cent per pound under the provision in paragraph 730 of the Tariff Act of 1930 for vegetable oil cake meal. Plaintiffs claim that entry should have been allowed under the free list provisions in paragraph 1689, as glue stock, or paragraph 1685, which covers materials used chiefly for fertilizers, or ingredients in the manufacture of fertilizer.

We quote the respective paragraphs so far as pertinent, as follows:

730. * * * all other vegetable oil cake and oil-cake meal, not specially provided for, three-tenths of 1 cent per pound * * *.

1685. Guano, basic slag (ground or unground), manures, and (notwithstanding any other provision of this Act) those grades of all other substances used chiefly for fertilizers, or chiefly as an ingredient in the manufacture of fertilizers.

1689. Hide cuttings, raw, with or without hair, ossein, and all other glue stock.

Plaintiffs rely upon their claim under paragraph 1689 as glue stock, although they do not abandon the alternative claim as fertilizer. A mere reading of the fertilizer paragraph, 1685, *supra*, will show that if the proof presented by the plaintiffs shows that these commodities are a grade of any substance (other than those enumerated specifically in the paragraph) which is used chiefly for fertilizers, or chiefly as an ingredient in the manufacture of fertilizers, they cannot be relegated to any other paragraph of the act. Therefore our first inquiry must be directed to that point. Without discussing at this time the testimony in detail, it is sufficient to state that plaintiffs have failed utterly to produce proof on that point. Accordingly the claim under paragraph 1685 is overruled.

We will therefore examine the record in order to determine whether plaintiffs have sustained their burden of proof that the commodities are glue stock. That being a designation by use, chief use must be shown. *United States* v. *Lyon*, 4 Ct. Cust. Appls. 438, T. D. 33873, and *Richard* v. *United States*, id. 470, T. D. 33883.

The first witness produced on behalf of the plaintiffs, Mr. Lyle Branchflower, is vice president and manager of the residue department of W. J. Lake, the importer of this merchandise, engaged in the feed and fertilizer business. He testified that this merchandise was sold to the Casein Manufacturing Co., engaged in manufacturing casein glue.

He stated that he took care of making arrangements for these importations with the seller in China. His experience was confined to the Pacific Coast and through the "mountain states." He stated that he had sold cottonseed meal, peanut oil-cake meal, and soya bean oil-cake meal for both feed and fertilizer; that based on his experience such mixtures would be used either for fertilizer or glue stock; that after the Casein Manufacturing Co. milled the meal and converted it, his firm took the residue back; that this residue was sold for fertilizer; that the present shipments of soya bean cake meal mixed with castor seed cake meal were the only shipments of which he had knowledge that consisted of meal made up in that manner; these were the first shipments handled by him. He further stated that in his opinion glue stock is a byproduct or material that is obtained from operations on some other product, the residue that is available or that can be used for the manufacture of glue. This witness testified that he did not see the instant merchandise used in the manufacture of glue stock but that he had seen soya bean cake meal, peanut cake meal, and

cotton seed cake meal used in Seattle for the manufacture of glue by the firms of I. F. Laucks, the Casein Manufacturing Co. of America, and the Casein Products Co.; that the imported commodities now before us are not universally traded in.

Mr. Frank Leckenberg, the second witness for the importer, stated that up to three years before the date of the hearing he was vice president of a firm dealing in feeds and fertilizer and since then has been dealing in fertilizer. His experience was confined to the Pacific Coast, Idaho, and Utah. This witness stated that he had no knowledge of the use of merchandise consisting of a mixture of 5 per centum castor seed cake meal and 95 per centum cotton seed meal; that he has never seen soya bean oil-cake meal mixed with castor seed meal used by anyone in any manner.

As to the mixture of cotton seed meal and castor seed cake meal plaintiffs' counsel stated at the beginning of the trial that this commodity, he had been informed, was in use on the Atlantic Coast and that the testimony might develop similarity of that mixture to the commodities now before us. Even if such testimony could have had any bearing on the issue before us, plaintiffs failed to produce it. The testimony of Mr. Leckenberg has no probative force in determining the issue now before us.

Mr. C. S. Leonardson was also called as a witness on behalf of the plaintiffs and stated that he has been western manager of the Casein Manufacturing Co. (which manufactures glue) in Seattle since November 1932, and that in such capacity he supervises all selling. He testified that the merchandise here involved which was purchased by W. J. Lake & Co., of Seattle, was practically all used as one ingredient in a finished glue, after having been ground and mixed with other materials. This witness testified as to the ingredients of animal glues and stated that all the present merchandise purchased by his firm was manufactured into plywood glue except the portion which they sold, which was the residue.

Mr. Patrick H. McMullen and Mr. Hans Seimirs were called as witnesses on behalf of the Government, both being connected with firms dealing in hides. The first named defined glue stock to be "anything you make glue out of." Mr. Seimirs testified that his concern sells glue stock which consists of the trimmings of hides. The testimony of these two witnesses threw little if any light on the question before us.

The most that can be said of the testimony produced by the plaintiffs is that they all agree that the present importations consist of a special mixture which was ordered by a firm engaged in the fertilizer and feed business; that it was actually used in the manufacture of glue and that in their opinion glue stock is any ingredient used in the manufacture of glue. The experience of these witnesses was limited to the

Pacific Coast states and one or two other western states. Therefore, we have no proof that these or similar products were not imported into other parts of the United States and used for some other purpose. Proof of suitability for use and actual use of particular importations is insufficient to show the chief use of that class of merchandise, especially where the experience of the witnesses has been limited to but one portion of the United States. Therefore, we cannot agree with plaintiffs' contention in their brief that "the sole use of the instant merchandise as glue stock fixes its classification as such."

Inasmuch as we find that plaintiffs have not sustained their burden of proof we hold that the correctness of the collector's classification and assessment of these commodities as vegetable oil cake meal under paragraph 730, *supra*, has not been overcome and must prevail.

Judgment for defendant. It is so ordered.